UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                                                    Case No.: 15-70981-ast

Cindy B. Galloway-O'Connor a/k/a Cindy Galloway
a/k/a C.B. Galloway,                                                           Chapter 7

                                    Debtor.

---------------------------------------------------------------X

### *CORRECTED* DECISION AND ORDER DENYING DEBTOR'S MOTION TO REOPEN CASE AND RESCIND REAFFIRMATION AGREEMENT

Pending before the Court is the motion of the above-captioned *pro se* debtor, Cindy B. Galloway-O'Connor a/k/a Cindy Galloway a/k/a C.B. Galloway's ("Debtor"), seeking to reopen her chapter 7 bankruptcy case to rescind a reaffirmation agreement (the "Motion"). Because Debtor has failed to demonstrate cause to reopen, the Motion is denied.

### JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND AND PROCEDURAL HISTORY[1]

On March 12, Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Debtor's schedules indicated she had no assets available for distribution. [dkt item 1]

On March 12, the Clerk's Office generated and mailed notice of the commencement of Debtor's case to all creditors listed in her schedules. In that notice, the case was labeled a "no asset case"; thus, creditors were directed not to file proofs of claim until given notice to do otherwise; a date for the § 341 meeting of creditors was also provided. [dkt item 2]

On April 26, Debtor entered into a proposed reaffirmation agreement with Santander Consumer USA, Inc. ("Creditor") seeking to reaffirm $28,529.40 she owed for a 2012 Audi Q5 (the "Reaffirmation Agreement"). On May 18, Creditor accepted the Reaffirmation Agreement, and on May 27, Creditor filed the reaffirmation agreement with the Court. [dkt item 16] Although the "No Presumption of Undue Hardship" box on the Reaffirmation Agreement was checked, the Reaffirmation Agreement indicated that Debtor was unrepresented by counsel in negotiating the agreement. As a result, on May 28, the Court scheduled a hearing on Debtor's request to approve the Reaffirmation Agreement for July 7. [dkt item 17]

On July 2, the trustee electronically docketed a report of no distribution, stating that he made a diligent inquiry into the financial affairs of Debtor and determined there is no property available for distribution to creditors.

On July 7, the Court conducted a hearing on the Reaffirmation Agreement, which requires Debtor to pay $646.06 per month at a 17.79% fixed rate for six (6) years (April 7, 2015

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and other public filings available on the Court's docket in this case.

to March 7, 2021), for a total of $28,529.40; the car was listed as being worth $30,612.00. Debtor's Schedules I and J indicated that, at the petition date, she had monthly income of $4,840.58 and expenses of $12,102.00, resulting in a negative cash flow of $7,261.42 each month. [dkt item 1]   On the Reaffirmation Agreement, however, Debtor represented in handwriting that she had substantially reduced her expenses such that she would have positive monthly income each month of $1,141.00, after taking into account reaffirmed debts (thus including the car payments).  Concerned about the amount and duration of payments, as well as the high interest rate, the Court questioned Debtor about her decision to enter into the agreement, her ability to make the payments, and her understanding that, if the agreement were approved, she would remain liable for any deficiency on the car debt in spite of receiving a discharge from other debts.  *See* 11 U.S.C. § 524(m).  Debtor indicated that she expected to imminently receive a raise at work, her bankruptcy case was relieving her of many of the monthly expenses indicated on her schedules, she was able to afford the monthly car payments, and she could make the payments she expected she would need to make each month.  Debtor also expressed that she needed this car for work as her other vehicle was inoperable.  Given that Debtor appeared to clearly and fully understand the implications of the Reaffirmation Agreement and her firm belief that she could and would make the car payments and her other regular monthly payments, the Court approved the Reaffirmation Agreement.  This approval was indicated by a docket notation on Debtor's case docket on July 7.

    On July 8, Debtor received her discharge.  [dkt item 25]  Debtor's case was also closed on July 8.

Less than sixty days later, on August 26, Debtor, *pro se*, filed a letter seeking to reopen her case on an emergency basis to rescind the Reaffirmation Agreement and to waive the fee to reopen her case (the "Motion"). [dkt item 27]

On August 26, the Court issued an order scheduling a hearing on the Motion for September 2 (the "September 2 Hearing"). [dkt item 28]

On September 2, the Court conducted the hearing, at which Debtor appeared. The Court inquired as to the status of the car and her payments. To the Court's surprise, Debtor advised that the car had been repossessed as she was not able to make the required payments. The Court instructed Debtor to consider obtaining counsel, if possible, and gave her until September 16 to file a post-hearing brief on the power of this Court, if any, to rescind the Reaffirmation Agreement. Debtor did not have counsel appear on her behalf, nor did she file a post-hearing brief. As of September 17, the Motion was on submission with the Court.

## **LEGAL ANALYSIS**

A. Standard for Reopening a Closed Bankruptcy Case

Bankruptcy Rule 5010 authorizes debtors or other parties in interest to move to reopen a closed bankruptcy case within a reasonable time. *See* FED. R. BANKR. P. 5010, 9024. Section 350(b) of the Bankruptcy Code authorizes courts to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Bankruptcy Code does not define what constitutes "cause" under § 350(b). This Court has previously stated that "[t]he statute's permissive language provides the Court with broad discretion to determine whether a debtor filed a motion to reopen in good faith or has demonstrated good cause." *In re Mohammed*, Case No. 13-73191 (AST), 2015 Bankr. LEXIS 2996, at *8-11 (Bankr. E.D.N.Y. Sept. 4, 2015)*; In re Farley*, 451 B.R. 235, 237 (Bankr. E.D.N.Y. 2011).

The decision to reopen a case "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 104 F. App'x. 199, 200 (2d Cir. 2004) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996)). Although a motion to reopen is generally considered a "ministerial act," in determining whether to grant the motion, it is appropriate for the Court to review the legal merits of the relief sought upon reopening. *See In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010) *aff'd Smith v. Silverman (In re Smith)*, 645 F.3d 186 (2d Cir. 2011). This Court will limit the exercise of its discretion to reopen a closed case "in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources." *Mohammed*, 2015 Bankr. LEXIS 2996, at *9-10; *Farley*, 451 B.R. at 237.

The moving party carries the burden of proof in establishing cause to reopen. *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) *appeal dismissed* 2012 U.S. Dist. LEXIS 113133 (E.D.N.Y. Aug. 12, 2012).

This Court has denied a motion to reopen a closed chapter 7 case in which a debtor received a discharge to allow the late filing of a reaffirmation agreement, having determined that it lacks authority to consider a reaffirmation agreement that was not entered into before the debtor received a discharge. *In re Mardy*, Case No. 10-73819 (AST), 2011 Bankr. LEXIS 880, at *17-18 (Bankr. E.D.N.Y. Mar. 15, 2011) (discussing §524(c)(1), which provides that a reaffirmation agreement is enforceable only if it "was made" prior to the granting of the discharge, and § 524(m)(1), which expressly provides that when a hearing to obtain court approval of a reaffirmation agreement is required, "such hearing shall be concluded before the entry of the debtor's discharge.").

As is discussed below, this Court lacks authority to order the rescission of the Reaffirmation Agreement. As such, cause does not exist to reopen Debtor's case.

B.  Standard to Rescind a Reaffirmation Agreement

Reaffirmation agreements are governed by 11 U.S.C. § 524. Section 524 sets forth a series of disclosure requirements and includes very specific timing mechanics, including Section 524(c)(4), which provides in pertinent part:

> (c) An agreement between a holder of a claim and debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if --
>   . . .
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim….

11 U.S.C. § 524(c)(4).

Creditors are required to provide an express disclosure of this right of rescission to the debtor; the Creditor here clearly did so within the Reaffirmation Agreement. Specifically, page 5 of the Reaffirmation Agreement states at the top of the page, in bold and all caps lettering, the following: "YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT." The text below the title clearly stated the applicable time frame within which Debtor could rescind the Reaffirmation Agreement:

> You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

Thus, Congress placed in the hands of a debtor the unilateral right to rescind within certain time parameters. In her Motion, Debtor does not allege that she rescinded the agreement within the applicable sixty days; instead, she states that she sought to cancel "within 60 days of when the Judge approved it, which was on July 7th, 2015." Motion, p. 1. [dkt item 27, attaching reaffirmation agreement] However, this is not the statutory time frame. The Bankruptcy Code builds in a number of protections for debtors who may misunderstand the implications of entering into a reaffirmation agreement; among these is the requirement that the court conduct a hearing on a reaffirmation agreement that may not be in the debtor's best interests by imposing an undue financial hardship, and that "the reaffirmation agreement must contain a clear and conspicuous statement advising debtors of their rights to rescind…[which right is]…unconditional…within a certain period of time upon notice to the creditor." *In re Saunders*, 169 B.R. 192, 195 (Bankr. E.D. Mo. 1994 (citing 11 U.S.C. § 524(c)(2)). As the *Sanders* court recognized, "reopening a case to grant a discharge on a debt which debtors reaffirmed and failed to rescind in a timely manner would be unfair to creditors who are entitled to rely on the reaffirmation agreement." *Id.* (citing *In re Grabinski*, 150 B.R. 427, 431 (Bankr. N.D. Ill. 1993)). After the sixty days has elapsed, debtors are bound by their agreement, and this Court is powerless to provide a remedy. *Id.*, at 195-96 (citing *Grabinski*, 150 B.R. at 431); *see also In re Davis*, 106 B.R. 701, 703-04 (Bankr. S.D. Ala. 1989).

Here, while Debtor now views her entering into and obtaining approval of her Reaffirmation Agreement as improvident, and now states that she cannot make the car payments, this Court lacks authority to alleviate this difficulty. The Reaffirmation Agreement was filed on May 27 and Debtor obtained her discharge on July 8. Debtor did not seek to rescind the Reaffirmation Agreement until August 26, several weeks after her time to unilaterally rescind

had run in accordance with the Bankruptcy Code and the terms of the Reaffirmation Agreement. Debtor did not allege that she was fraudulently induced to enter into the Reaffirmation Agreement; Debtor merely stated she made a bad economic decision and wants to undo that mistake.

Because Debtor did not comply with § 524 and the statute is clear on its face, this Court ""is powerless to provide a remedy…." *Saunders*, 169 B.R. at 195 (citing *Davis* 106 B.R. at 704)).

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Debtor's Motion is denied.

**Dated: September 29, 2015**
**Central Islip, New York**

**Alan S. Trust**
**United States Bankruptcy Judge**